## UNITED STATES v. MARXEN, TRUSTEE.

No. 544. Argued March 28, 1939.—Decided May 15, 1939.

*Assistant Attorney General Whitaker,* with whom *Solicitor General Jackson,* and *Messrs. Paul A. Sweeney, Edward J. Ennis,* and *Abner H. Ferguson* were on the brief, for the United States.

*Mr. Clarence Hansen,* with whom *Mr. Thomas S. Tobin* was on the brief, for Marxen, Trustee.

By leave of Court, *Mr. Harry Loeb Mostow* filed a brief, as *amicus curiae,* urging that the question certified be answered in the negative.

MR. JUSTICE REED delivered the opinion of the Court.

The case is here on certificate from the Circuit Court of Appeals for the Ninth Circuit with a request for instructions needed in a pending cause. § 239, Jud. Code; 28 U. S. C. § 346. The following facts are stated: On August 10, 1934, the Federal Housing Administrator issued a policy of insurance, under the provisions of the National Housing Act, Title 1, § 2,[1] to the California Bank, a banking corporation. On January 2, 1936, the California Bank, under the protection of this policy, made a loan to the Monterey Brewing Company. The company paid part of the indebtedness but defaulted on the balance on February 2, 1937. On April 5, 1937, it filed a petition in bankruptcy and was adjudicated a bankrupt. Under the insurance contract the bank had to wait until 60 days after default before making claim upon the Administrator. The 60 days expired two days before bankruptcy of the company. The bank, however, did not present its claim to the Administrator until July 3, 1937; the latter paid August 4, 1937, by draft drawn on the

---

[1] "Sec. 2. The Administrator is authorized and empowered, upon such terms and conditions as he may prescribe, to insure banks . . . which are approved by him as eligible for credit insurance, against losses which they may sustain as a result of loans and advances of credit, and purchases of obligations representing loans and advances of credit, made by them . . . for the purpose of financing alterations, repairs, and improvements upon real property. In no case shall the insurance granted by the Administrator under this section to any such financial institution exceed 20 per centum of the total amount of the loans, advances of credit, and purchases made by such financial institution for such purpose . . ." Act of June 27, 1934, c. 847, 48 Stat. 1246.

Treasury of the United States; the bank assigned the note to the "United States of America." Later the Administrator filed a claim upon the note in the name of the United States of America.

The referee allowed it as a general claim only. The district court approved. *In re Monterey Brewing Co.,* 24 F. Supp. 463. On the appeal to the circuit court of appeals the following question, decisive of the controversy,[2] was certified:

"Where, prior to the filing of a petition for and adjudication in bankruptcy of the maker of a promissory note payable to a bank, the Federal Housing Administrator, under the provisions of the National Housing Act, insured the payee bank against the nonpayment of the note by its maker, upon which note the maker became in default more than sixty days prior to said filing and adjudication, and upon demand of the insured bank made after the adjudication, the Federal Housing Administrator paid to the bank its claim arising from such default, and procured an assignment to the United States of the claim of the insured bank against the bankrupt which claim had not been presented or proved in bankruptcy by the insured bank, and presented such claim in the name of the United States to the trustee in bankruptcy having before him other allowed claims against the bankrupt, is such claim entitled to priority over such other claims under sec. 3466 of the Revised Statutes (31 U. S. C. A. § 191) by reason of the provisions of sec. 64 (b) (7) [11 U. S. C. A. § 104 (b) (7)]."

Section 64 (b) (7) conferred priority upon "debts owing to any person who by the laws of . . . the United States is entitled to priority: *Provided,* that the term

---

[2] *United States* v. *Mayer,* 235 U. S. 55, 66; cf. *Wheeler Lumber Co.* v. *United States,* 281 U. S. 572, 577; *Indian Motocycle Co.* v. *United States,* 283 U. S. 570, 573.

'person' . . . shall include . . . the United States . . ."[3]
Section 3466 of the Revised Statutes, the basis for the claimed priority, provides that "Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied; and the priority hereby established shall extend . . . to cases in which an act of bankruptcy is committed."

Although an amendment of the National Housing Act authorized the Administrator to sue and be sued in any court of competent jurisdiction, state or federal,[4] it is not necessary in answering the present certificate to determine whether by this addition the Congress intended to give the Administrator the status of a corporation or other entity distinct from the United States and by such status to confer on or withhold from claims of the Federal Housing Administration against bankrupts the advantages of § 3466.[5] We can deal only with a claim of the Federal Housing Administration assigned to the United States after the adjudication in bankruptcy of the obligor. It is assumed that such a claim belongs to and is made by the United States.[6]

---

[3]Act of May 27, 1926, c. 406, 44 Stat. 667, 11 U. S. C. § 104 (b) (7). This section has been amended by the Act of June 22, 1938, c. 575, § 64, 52 Stat. 874.

[4]Act of August 23, 1935, c. 614, § 344 (a), 49 Stat. 722.

[5]The purpose of the amendment was said to be "clarifying." Sen. Rep. No. 1007 on H. R. 7617, 74th Congress, 1st Session, p. 24. The House Report merely stated its substance. H. R. Rep. No. 1822 on H. R. 7617, 74th Congress, 1st Session, p. 57. The Congressional Record is silent on this clause of the Banking Act of 1935.

A corporation wholly owned by the United States is held without the advantages of § 3466. *Sloan Shipyards* v. *U. S. Fleet Corporation*, 258 U. S. 549, 570.

[6]Cf. *Wagner* v. *McDonald*, 96 F. 2d 273, 274; *In re Dickson's Estate*, 84 P. 2d 661, 664; *DuPont de Nemours & Co.* v. *Davis*, 264 U. S. 456; *Clallam County* v. *United States*, 263 U. S. 341; *North Dakota-Montana Wheat Growers Assn.* v. *United States*, 66 F. 2d 573, 576–577.

Before considering the applicability of § 3466 to claims of the United States acquired after the bankruptcy of the obligor, we must examine the contention of the Government that it possessed a provable claim at the time the petition in bankruptcy was filed. This assertion predicates an agreement, express or implied, by the obligor to indemnify the Government for any loss it may sustain by reason of its insurance of the bank. The question certified contains nothing as to the contract of insurance except that it was under the provisions of the National Housing Act and "insured the payee bank against the non-payment of the note by its maker." The section of that act, quoted above, does not indicate any privity between the bankrupt maker and the Government based upon the insurance contract. Even if we accept as accurate the statement in the certificate that the Administration insured against the non-payment of this note,[7] there is nothing in the record to connect the maker with the insurance. The Government attempts to fill in the facts lacking in the certification by printing in its brief a regulation of the Federal Housing Administration, Number 10 of July 15, 1935,[8] and the form of credit statement from the note maker to the bank in use, presumably, at

[7] This is not in accord with the practice under Title I of the National Housing Act. The act is administered so as to create an insurance reserve for each approved financial institution of not to exceed the authorized percentage of the total amount of qualified paper. Cf. Regulations, Federal Housing Administration, Property Improvement Loans, 3 Federal Register 358, regulation number 17.

[8] "The question of the financial condition of the borrower is left to the reasonable judgment of the insured institution as a credit matter. The borrower must furnish the lending institution a financial or credit statement, approved as to form by the Administrator, which in the judgment of the insured institution shows the borrower to be solvent, with reasonable ability to pay the obligation and in other respects a reasonable credit risk in view of the insurance provided by the National Housing Act."

the time of the loan. The form contains this sentence, as well as information as to the applicant's employment or business, his income and the property to be improved: "The following information is given for the purpose of inducing you to grant credit under the provisions of Title I of the National Housing Act."

The regulation and the credit statement certainly do not supply the facts necessary to the conclusion that this particular form of credit statement was used. As the certificate does not show the State in which the note was executed, payable or enforceable, we are left to speculate as to the applicable law of indemnity. It is not clear that a voluntary guarantor can recover in every jurisdiction from the involuntary principal who has not requested the service.[9] But even if we assume that such a guarantor may recover upon an implied promise of reimbursement, the rule is not effective here. The statement of the case and the question certified show that the claim in bankruptcy of the Government is based upon the note, duly assigned to it after bankruptcy. As no proof was made of any claim for reimbursement, such a claim is not involved.[10]

The claim on the note, assigned to the United States subsequently to the maker's bankruptcy, has priority, if at all, by virtue of the general provisions of § 3466, as recognized by § 64 (b) (7) of the Bankruptcy Act.[11]

[9] Cf. *Leslie* v. *Compton,* 103 Kan. 92; 172 P. 1015; *Marsh* v. *Hayford,* 80 Me. 97; 13 A. 271; *McPherson* v. *Meek,* 30 Mo. 345.

[10] Cf. *Insley* v. *Garside,* 121 F. 699, 702. Cf. also § 57 (i) which provides that "Whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor." Act of July 1, 1898, c. 541, § 57, 30 Stat. 560, 11 U. S. C. § 93.

[11] See note 3, *supra.*

That subdivision granted priority ahead of dividends to creditors, to claims entitled to priority under the laws of the United States. Priority has been secured to the United States in varying language throughout its history.[12] The tendency has been to interpret these provisions liberally to secure the advantage sought by the Congress.[13] "As this statute has reference to the public good, it ought to be liberally construed."[14] It has been said that "nothing else appearing" even claims under the railroad Federal Control Act would be entitled to priority.[15] But this principle of construction is subject to the limitation that the generality of the language of the section is restricted by the purpose to grant priority to the United States, only, and by legislative intention, as shown by other statutes. Consequently priority was refused to corporations wholly owned by the United States[16] and to the Director General of Railroads because

---

[12] The Government summarizes the legislative background as follows: "The Act of July 31, 1789, Sec. 21, c. 5, 1 Stat. 29, 42, first gave the United States priority but was limited to debts due on bonds for duties. The Act of May 2, 1792, Sec. 18, c. 27, 1 Stat. 259, 263, allowed sureties who paid their debts to the United States to exercise their priority. The Act of March 3, 1797, Sec. 5, c. 20, 1 Stat. 512, 515, extended the priority to all debts due from any person. The Act of March 2, 1799, Sec. 65, c. 22, 1 Stat. 627, 676, applied to bonds for duties. R. S., Sec. 3466 is derived from the Acts of 1797 and 1799."

[13] *United States* v. *Fisher*, 2 Cranch 358; *Harrison* v. *Sterry*, 5 Cranch 289, 298–299; *United States* v. *State Bank*, 6 Pet. 29, 35; *Beaston* v. *Farmers' Bank*, 12 Pet. 102, 134; *Lewis* v. *United States*, 92 U. S. 618, 621; *Bramwell* v. *U. S. Fidelity & Guaranty Co.*, 269 U. S. 483, 487; *Price* v. *United States*, 269 U. S. 492, 500.

[14] *Beaston* v. *Farmers' Bank*, *supra*.

[15] *Mellon* v. *Michigan Trust Co.*, 271 U. S. 236, 239.

[16] *Sloan Shipyards* v. *U. S. Fleet Corp.*, 258 U. S. 549, 570. Even though private parties might have participated in stock ownership under the law. See p. 565.

§ 10 of the Federal Control Act manifested an intention that the carriers under federal control should be treated as before their transfer to federal operation.[17] The United States itself when it sought priority for its loans under the Transportation Act was denied the benefits of § 3466 because the intention to build up the credit standing of the railroads was inconsistent with the claimed priority.[18]

We are of the view that § 3466 is inapplicable to general claims in bankruptcy transferred to the United States, or to which it has become subrogated on payment, after the filing of the petition, for the reason that the rights of creditors are fixed by the Bankruptcy Act as of the filing of the petition in bankruptcy. This is true both as to the bankrupt and among themselves.[19] The assets at that time are segregated for the benefit of creditors.[20] The transfer of the assets to someone for application to "the debts of the insolvent, as the rights

---

[17] *Mellon* v. *Michigan Trust Co., supra,* 240.

[18] *United States* v. *Guaranty Trust Co.,* 280 U. S. 478, 485–86.

[19] *White* v. *Stump,* 266 U. S. 310, 313; *In re C. H. Earle, Inc.,* 2 F. Supp. 15, affirmed on the opinion below, 65 F. 2d 1013. Cf. *Spokane County* v. *United States,* 279 U. S. 80, 93; *United States* v. *Oklahoma,* 261 U. S. 253, 260, as to receivership proceedings.

The lower courts have divided upon the issue whether a Federal Housing Administration claim is entitled to priority. Priority has been given in *Wagner* v. *McDonald,* 96 F. 2d 273; *In re Wilson,* 23 F. Supp. 236; *In re T. N. Wilson, Inc.,* 24 F. Supp. 651; cf. *In re Dickson's Estate,* 84 P. 2d 661. Priority has been denied in *In re Hansen Bakeries, Inc.,* 103 F. 2d 665; *Federal Housing Administrator* v. *Moore,* 90 F. 2d 32; *In re Stamford Auto Supply Co.,* 25 F. Supp. 530; *In re Miller,* 25 F. Supp. 336; cf. *Paul* v. *Paul Lighting Fixture Co.,* 13 Ohio Op. 27. The assignment was made prior to bankruptcy or insolvency in the *Wagner* and *Dickson* cases. In the *Wilson* and *T. N. Wilson, Inc.,* cases the time of assignment is uncertain. In the remaining cases it came after bankruptcy or insolvency.

[20] *Mueller* v. *Nugent,* 184 U. S. 1, 14; *May* v. *Henderson,* 268 U. S. 111, 117.

and priorities of creditors may be made to appear," [21] takes place as of that time.

The question certified should therefore be answered in the negative.

*Question answered "no."*

The CHIEF JUSTICE and MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.

--------

[21] *Bramwell* v. *U. S. Fidelity & Guaranty Co.,* 269 U. S. 483, 490.