**In re MILLER.**

**UNITED STATES v. BURKE.**

No. 216.

Circuit Court of Appeals, Second Circuit.
July 10, 1939.

New York City, on the brief), for the United States.

Harry Loeb Mostow, of New York City, for trustee-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In 1935, Henry Miller borrowed $2,000 of the National City Bank of New York under the Modernization Credit Plan of the National Housing Administration and gave his promissory note to the bank to secure this loan. The bank in 1934 had been insured against losses on such notes by the Federal Housing Administrator to the extent provided by the National Housing Act, § 2 (Act of June 27, 1934, c. 847, 48 Stat. 1246, 12 U.S.C.A. § 1703). Under this statute, a bank approved by the Administrator as eligible for credit insurance may be insured against losses, sustained as a result of loans and advances of credit, for the purpose of financing alterations, repairs, and improvements upon real property, but not to exceed 20 per cent of the total amount of such loans and advances of credit made by the bank. Miller became bankrupt in 1936, and was then indebted to the bank in the amount of $1,477 as the unpaid balance on his note. The bank filed a proof of claim for this sum. Later the Administrator reimbursed the bank, in accordance with its contract of insurance, and, on October 14, 1936, took an assignment of the note to "the Federal Housing Administration acting on behalf of the United States of America." On February 20, 1937, the Administrator filed a proof of claim against the bankrupt's estate purporting to act in behalf of the United States and claiming priority over claims of general creditors. Later he notified the trustee that the bank's claim was withdrawn. The trustee made objection to the asserted priority, but the referee held that the claim was so entitled. The referee's order was, however, reversed by the District Court, which held that at the time of the bankruptcy the claim in question was a simple debt owed by the bankrupt to the bank, and not entitled to priority. The court declined to pass upon the question whether a debt owed to the Federal Housing Administrator prior to the bankruptcy of the debtor was a debt owing to the United States.

■ If, as the claimant asserts, the claim is based upon a debt owed by the bankrupt

Edward J. Ennis, Atty., Dept. of Justice, and Lamar Hardy, U. S. Atty., both of New York City (John T. Cahill, U. S. Atty., and Jerome H. Doran, and John W. Burke, Jr., Asst. U. S. Attys., all of

to the United States, it is entitled to priority. Rev.Stat. § 3466, 31 U.S.C.A. § 191; Bankruptcy Act, § 64b (7), 11 U.S.C.A. § 104 (b) (7); United States v. Kaplan, 2 Cir., 74 F.2d 664. Whether or not a claim under the Federal Housing Act is a claim owed to the United States has been a matter of diverse opinion in the federal courts,[1] at least until the adverse decision of the Supreme Court of the United States in United States v. Marxen, 59 S. Ct. 811, 83 L.Ed. ——, ——which, however, did not put the matter at rest according to the claimant's view. Here the Court held that a claim against a bankrupt on a note under this act assigned by the bank to the United States after the bankruptcy was not entitled to priority. This decision was made in answer to a request for instructions from the Circuit Court of Appeals for the Ninth Circuit, which had previously decided against priority in the case of Federal Housing Administrator v. Moore, 9 Cir., 90 F.2d 32. In its certificate the circuit court suggested that the decision of the Circuit Court of Appeals for the Eighth Circuit in Wagner v. McDonald, 8 Cir., 96 F.2d 273, was to the contrary, although in the Wagner case the notes had been assigned to the Administrator prior to the maker's bankruptcy.

The trustee asserts that the decision in the Marxen case conclusively settles the issue here presented. The claimant, however, asserts that the Court in the Marxen case expressly left undecided, for lack of sufficient facts in the certificate for instructions, the question whether the United States at the time the petition in bankruptcy was filed possessed a provable claim predicated upon an agreement, express or implied, by the obligor to indemnify the Government for any loss it might sustain by reason of its insurance of the credit to the bank. The question there left undecided, it is asserted, is presented for decision by the present record, which shows the details of the transaction by which Miller secured the loan. It does appear that Miller signed an application and credit statement upon a form approved by the Administrator by regulation adopted pursuant to Section 2 of the Housing Act. Among other things, this application contained the following sentence: "The information given hereinafter is to induce you [The National City Bank of New York] to grant credit under Title 1 of the National Housing Act [12 U.S.C.A. § 1702 et seq.]." And the bankrupt also answered in the negative the question, "Have you previously applied for credit pertaining to this property under Title 1 of the National Housing Act?" Furthermore, the note executed by the bankrupt states that it is for a "36 Months Loan Modernization Credit Plan (Under the National Housing Act)." These facts are sufficient, so the claimant asserts, to put the borrower on notice that the bank would not have granted the loan unless payment was insured by the United States, and hence there should be implied a promise by the maker to reimburse the United States if, as insurer, it was required to pay the loan.

There can be little doubt that the facts show clearly here the making of a loan pursuant to the provisions of the National Housing Act. But we do not see how that fact will enable the claimant to succeed in the face of the adverse decision by the Supreme Court in the Marxen case. Although, as the cases show, there had been considerable doubt previously, it is now settled by the case that the obligation owed by the debtor on his note is a simple debt to the bank while held by the latter and that its status cannot be changed by assignment after the debtor has been adjudicated bankrupt. Can this obligation be

---

[1] Priority was denied in Federal Housing Adm'r v. Moore, 9 Cir., 90 F.2d 32; In re Hansen Bakeries, Inc., 3 Cir., 103 F.2d 665; Re Monterey Brewing Co., D. C.S.D.Cal., 24 F.Supp. 463 (cf. s. c., United States v. Marxen, 59 S.Ct. 811, 83 L. Ed. ——); In re Stamford Auto Supply Co., D.C.N.D.Tex., 25 F.Supp. 530; In re Wissmeier, D.C.E.D.N.Y., 26 F.Supp. 806; and in this case below, In re Miller, D.C.S.D.N.Y., 25 F.Supp. 336—in all of which the assignment was made after bankruptcy or insolvency. Priority was granted in Wagner v. McDonald, 8 Cir., 96 F.2d 273; In re Wilson, D.C.N.D. Tex., 23 F.Supp. 236; In re T. N. Wilson, Inc., D.C.E.D.N.Y., 24 F.Supp. 651; In re Dickson's Estate, Wash., 84 P.2d 661; and in the unreported case of In re Willax, D.C.S.D.N.Y., March 3, 1937. In the Wagner and Dickson cases the assignment was made prior to bankruptcy or insolvency, while in the others the time of assignment was uncertain. Cf. also Paul v. Paul Lighting Fixture Co., 13 Ohio Op. 27, granting priority in receivership proceedings; 52 Harv.L.Rev. 320, approving the Wagner case; and 25 Va.L. Rev. 369, approving the In re T. N. Wilson, Inc., case.

added to by spelling out an agreement of indemnity of the United States by the debtor? We think that this is not permissible either on the facts or as a matter of law.

■ On the facts the most that can be claimed as showing an express agreement to indemnify is that the debtor knew the United States was to insure his note. Even here, the insurance was subject to the limitation that this loan did not exceed 20 per cent of all such loans made by this bank and to due and proper claim for reimbursement on the part of the bank. Under the circumstances, however, a duty on the part of the debtor to reimburse the insurer is appropriate, though it seems more properly to follow from principles of subrogation than because of agreement. Certainly Miller made no express promise to reimburse the Government, and he did not expect to pay the debt twice. In the Marxen case it was said that the relationship there was that of "a voluntary guarantor" and an "involuntary principal who has not requested the service." 59 S.Ct. 814. The form of application here and the note may indicate that Miller was aware of "the service," but it is difficult to see on these facts how he has intended to, or has increased his obligation. Indeed, this seems to have been the original view of the claimant, for the proof of claim filed by the Administrator was on the basis of the bank's assignment of the debt and its security, the note, "whereupon the said debtor became indebted to the United States," rather than upon a previously existing obligation to indemnify.

But if such an obligation can be implied from the facts, we think the legal result is the same. It has been held that an insurer must prove the creditor's claim, not his own. Insley v. Garside, 9 Cir., 121 F. 699, 702, modified in 9 Cir., 123 F. 78. So also must an endorser or a surety who has not paid the debt. Phillips v. Dreher Shoe Co., D.C.M.D.Pa., 112 F. 404; In re Dr. Voorhees Awning Hood Co., D.C.M.D.Pa., 187 F. 611, 629, 633; In re Manhattan Brush Mfg. Co., D.C.S.D.N.Y., 209 F. 997; In re Heyman, D.C.S.D.N.Y., 95 F. 800. This view that a person secondarily liable proves only in the right of the creditor, not upon an agreement, express or implied, of indemnity, seems to be generally supported by commentators. Holbrook, A Surety's Claim Against His Bankrupt Principal Under the Present Law, 60 U. of Pa.L.Rev.

482, 490; McLaughlin, Amendment of the Bankruptcy Act, 40 Harv.L.Rev. 583, 586; 31 Col.L.Rev. 1348, 1352; 13 Mich.L.Rev. 500, 503. The case of Tennant v. United States Fidelity & Guaranty Co., 3 Cir., 17 F.2d 38, 39, apparently contra in allowing proof on an express contract of indemnity, though the surety had already paid, is criticized in 31 Col.L.Rev. 1352, as affording a possibility of double proof. Indeed, the result urged by the writers and supported by the cases first cited seems to follow naturally from Section 57i of the Bankruptcy Act, which provides that "Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor." Act of July 1, 1898, c. 541, § 57i, 30 Stat. 560, 11 U.S.C.A. § 93(i). By such proof, ample protection is accorded the surety without the danger of double proof to which the Government's case here would seem directly to lead.

Williams v. United States Fidelity & Guaranty Co., 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713, on which the claimant strongly relies, leads to no different conclusion. There it was held that a discharge in bankruptcy barred a claim by a surety of the bankrupt, even though the surety had not paid its obligation at the time of the adjudication. True, the bankrupt there had entered into a specific contract of indemnity, but the Court states that this was no more than would have been implied under the circumstances. While the Court cites Section 57i, it does not stress proof of the surety's claim under that section alone, but considers the general purpose of the act to free an honest debtor from the weight of oppressive indebtedness. It then points out how this purpose would be set at naught if a luckless debtor who had faithfully tried to secure his creditors against loss was thus left to the mercy of his sureties. Hence it was held that the surety's right of proof was sufficient to bar his claim on his principal's discharge. See 13 Mich.L.Rev. 500, 503; cf. Maynard v. Elliott, 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028, and 31 Col. L.Rev. 1348, 1352. This desirable result, therefore, does not rest upon a specific contract of indemnity or require a holding that a surety has a double claim against his principal.

We conclude, therefore, that, notwithstanding the more complete record in this case, the situation is essentially similar to that presented in United States v. Marxen, supra; and under the authority of that decision the claim in question is not entitled to priority.

Affirmed.

