## CHASE NAT. BANK OF CITY OF NEW YORK v. MOBILE & O. R. CO.

### No. 56.

District Court, S. D. Alabama, S. D.
Nov. 28, 1939.

M. Barratt Walker, of Baltimore, Md., and Coleman, Spain, Stewart & Davies, of Birmingham, Ala., for United States Fidelity & Guaranty Co.

Mark D. Eagleton, Roberts P. Elam, and Chelsea O. Inman, all of St. Louis, Mo., and Wm. B. & C. C. Inge, of Mobile, Ala., for Robert P. Pellett and John F. Rogers, Jr., as administrator.

Mudge, Stern, Williams & Tucker and Larkin, Rathbone & Perry, all of New York City, Rushton & Rushton, of Montgomery, Ala., and Harry T. Smith & Caffey, of Mobile, Ala., for Chase Nat. Bank and Carl E. Buckley, as trustee.

Mitchell, Taylor, Capron & Marsh, of New York City, and Smith & Johnston, of Mobile, Ala., for City Bank Farmers Trust Co., as trustee.

ERVIN, District Judge.

This matter comes on to be heard on objections to the claims of Pellett, Rogers, and the United States Fidelity Guaranty Company.

Pellett and Rogers were employees of the Mobile and Ohio Railroad Company, and were injured in the performance of their work. The Mobile and Ohio Railroad Company declined to pay them so they sued and each recovered a judgment.

The United States Fidelity and Guaranty Company made bond without security for the Railroad, for appeals to the Supreme Court where employees had recovered judgments for personal injuries.

The judgments were affirmed and the security had to pay such judgments.

The question is, do they come under the six months rule so as to entitle them to be paid out of the earnings during the receivership operation?

In the argument of the instant case, it was insisted that the common law is not a part of the Federal Law as held in Erie R. Co. v. Tompkins, 304 U.S. 64, on page 78, 58 S.Ct. 817, on page 822, 82 L.Ed. 1188, 114 A.L.R. 1487, where the Court states: "There is no federal general common law." This statement was not necessary to the decision of that case where the question was on the construction of Sec. 34 of the Judiciary Act of September 24, 1789, 1 Stat. 92, 28 U.S.C.A. § 725, reading as follows: "The laws of the several States, except where the Constitution, treaties, or statutes of the

United States otherwise require or provide, shall be regarded as rules of decision in trials at *common law*, in the *courts of the United States*, in cases where they apply." (Italics mine)

Certainly the Congress must have understood the Federal Courts had common law jurisdiction when this statute was passed.

■ I agree to the construction in the Erie case, but not to the statement above quoted for the following reasons.

Admitting that under the above Act the Federal Courts can not enforce a common law provision in a state, which is opposed to the law of such state, it does not follow that the common law does not exist as a part of the federal law.

Let us now look at the provisions of the Constitution itself. In Sec. 9 of Art. 1, U. S.C.A., it says:

"The Privilege of the Writ of Habeas Corpus shall not be suspended. * * *

"No Bill of Attainder or ex post facto Law shall be passed."

Neither the writ of Habeas Corpus nor the Bill of Attainder nor Ex post Facto Law was known in any place except the common law, nor does the Constitution undertake to define them. It takes for granted that they are known by all.

Article 3 provides for the judicial power and the establishment of courts in the following manner:

"Section 1. The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. * * *

"Section 2. The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;—to all Cases affecting Ambassadors, other public Ministers and Consuls;—to all Cases of admiralty and maritime Jurisdiction;—to Controversies to which the United States shall be a Party;—to Controversies between two or more States;—between a State and Citizens of another State;—between citizens of different States,—between citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

\* \* \* \* \* \*

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

It will be observed that nothing is said about what law or rules shall be applied on the trial.

Certainly the writers of the Constitution must have intended the common law. They would not intentionally have left the courts there created without any law to govern them.

Take the Fifth Amendment: "No person shall be held to answer for a *capital* or otherwise *infamous crime*, unless on a *presentment* or *indictment* of a *grand jury*, * * * nor shall any person * * * be deprived of life, liberty, or property, without *due process of law*." (italicizing mine) Where did the writers get these terms and provisions? How are the courts to determine what is an infamous crime? What do they mean by "due process of law"? To what law do they refer?

There is no definition or explanation as to what is *due* process, or by what law such process is to be determined, except the common law. Den ex dem Murray et al. v. Hoboken Land & Improvement Co., 18 How. 272, 276, 15 L.Ed. 372.

Grand juries, and trials by jury, were unknown to any law except the common law.

We come now to the Seventh Amendment: "In *suits* at *common law*, where the value in controversy shall exceed twenty dollars, the right of *trial* by *jury* shall be *preserved*, and no fact tried by a jury shall be otherwise re-examined in any Court of the *United States*, than according to the *rules* of the *common law*."

This is the whole amendment, and so as to make it definite, it expressly makes the common law rules control both *suits* at *common law* and *trials by jury* in courts of the *United States*.

What was preserved was a common law right. This comes near covering the field.

The Eighth Amendment refers to excessive bail and cruel and unusual punishments. Where did they get those terms, and by what standards except those of the common law, are they to be determined?

The Eleventh Amendment says: "The Judicial power of the United States shall not be construed to extend to any *suit* in *law* or *equity*, commenced or prosecuted

against one of the United States by Citizens or another State," etc.

Again we have the common law terms, suit at law and in equity. There are many more expressions used, but these are enough to show that the Constitution adopts many of the provisions of the common law and many of its terms without undertaking to define them.

Would it apply some and use all without a meaning?

There can be no doubt that the writers of the Constitution thought it unnecessary to make any express adoption of the common law. They wrote with a knowledge of its provisions, used its terms, declared its courts, all three of them, common law, equity and admiralty, defined their powers and jurisdiction, as well as some limitations, and then left these courts to apply the common law in their administration of justice, and I think that the Federal Judges, including the Justices of the Supreme Court, were just as competent to understand and declare what the common law was as are the State Courts, so as not to overlook the law of the different states in which they sit.

Suppose a matter should come before a Federal Court sitting in a state that has no statute or ruling by its highest court on a question, what law is such Federal Judge to follow if not the common law? Suppose such Court is sitting in a state that has not adopted the common law, what law is such Court to apply?

The Federal Courts have from the time of their creation administered the common law within the limitations of their jurisdiction as fixed by the Constitution.

What other law could they administer? "The common law of England is not to be taken, in all respects, to be that of America. Our ancestors brought with them its general principles, and claimed it as their birthright; but they brought with them and adopted, only that portion which was applicable to their situation." Van Ness v. Pacard, 2 Pet. 137, 143, 144, 7 L.Ed. 374.

This quotation is from an opinion by Justice Story, who then proceeds for several pages to discuss and apply the common law principles, showing what law the early judges applied, as applicable to our situation.

There were thirteen colonies and no specific authority to administer the law of any one of them, they had the common law

and it must have occurred to them that the Constitution was adopted in the light of that law, and as no specific directions were given, it was the intention that they were to follow the law they were accustomed to.

Take the very statute construed in the Erie case, it says "the laws of the several states * * * shall be regarded as rules of decision in *trials* at *common law.*"

Certainly the Congress at that time must have thought that the Federal Courts had common law jurisdiction, for what other law were they to administer in their trials at common law?

Under the Erie R. Co. v. Tompkins, if the law of the state in which the injury occurred is to be applied, how is this court going to do that, for the Mobile and Ohio runs through five states?

How is the court to determine what portion of the earnings of the road was realized in each state, or what portions of the cost of operations was incurred in such state? Only a little thought is necessary to show what a confusion worse confounded we would have.

Remember that the Erie case was construing Section 34, and the last words of that section, after stating that the laws of the states shall be followed, say: "in cases where they apply."

I do not think either Section 34, or what is said in Erie R. Co. v. Tompkins, are applicable to the questions to be decided by me, so I shall apply the six months rule as laid down by the Courts.

The amendment to the Bankrupt Act may be considered in two lights.

First: this being a receivership based on insolvency, is the power of Congress derived from the Constitutional grant to pass Bankruptcy Acts? U.S.C.A.Const. art. 1, § 8, cl. 4.

Some of the authorities place the condition of insolvency and bankruptcy in the same category. Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. R. Co., 294 U.S. 648, 55. S.Ct. 595, 79 L.Ed. 1110.

Hanover National Bank v. Moyses, 186 U.S. 181, 186, 22 S.Ct. 857, 46 L.Ed. 1113.

Second: as there are no restrictions in the Constitution limiting Congress to one subject of legislation in each bill, as is found in many state Constitutions, Congress may enact several separate subjects in one bill.

■ In both of these cases, however, the limitations of due process is found, Louisville Joint. Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

■ As I see it, the amendment found in sub. n of the Bankrupt Act, section 77, 11 U.S.C.A. § 205, sub. n, should be treated as if passed in a separate bill providing that in equity receiverships of railroad corporations now or hereafter pending in any court of the United States, claims for personal injuries to employees of a railroad corporation, claims of personal representatives of deceased employees of a railroad corporation, arising under State or Federal laws, and claims now or hereafter payable by sureties upon supersedeas, appeal bonds executed without security, shall be preferred and paid out of the assets of such railroad corporation as operating expenses of such railroads.

■ Congress of course knew of the six months rule as applied in such equity receiverships, and passed this Act to make definite the right to be paid out of the earnings of the railroads. There is nothing in the Act fixing the time such injury must have occurred, whether before or after the passing of the Act, it merely declares that claims for personal injuries by employees shall be preferred and paid out of the *assets* of such railroads. The word "assets" goes far beyond the *earnings,* but in the instant case, I am concerned only with the earnings. The Act declares such claim is to be paid in a receivership now pending, therefore it seems to me that it includes a claim for an injury already received.

■ It is urged on me that this construction will make the Act unconstitutional and that courts should adopt that construction which would make the Act constitutional. I admit the rule but deny its application to the facts of this case.

The statement of the proposition admits that if held to apply only to subsequent injuries, the Act is constitutional. The contention is based on the ruling in 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, ante, which I admit to be good law, but let us see how it applies here. The liens of the mortgages which are asserted to be prejudiced accrued many years ago, and long before any of the injuries occurred to any of the claimants here.

Such mortgages were not executed between the time of any injury and the passing of the Act, so if the Act would be valid as applied to subsequent injuries, there would be no want of due process as to the prior ones, for nothing more is taken from the mortgagees by one construction than by the other.

■ But let us look further. There can be no want of due process unless property of one is taken without his consent. We are not discussing the physical property of the railroad, but only its earnings during the receivership.

In Fosdick v. Schall, 99 U.S. 235, 252, 25 L.Ed. 339, the six months rule was laid down and has been followed ever since, that rule was then stated as follows:

"The income out of which the mortgagee is to be paid is the net income obtained by deducting from the gross earnings what is required for necessary operating * * * expenses, proper equipment, and useful improvements.

"Every railroad mortgagee in accepting his security impliedly agrees that the current debts made in the ordinary course of business shall be paid from the current receipts before it has any claim upon the income."

Since that decision, all the courts have agreed on the principles there enunciated, but many have disagreed in the application of those principles to the facts. On one thing they have ultimately agreed, viz.: that such claims must, unless preferred, have accrued within the six months preceding the receivership.

The main divergence has been over what claims were necessarily incurred, and that is not surprising.

Some included claims for personal injury to employees, while others denied such claims, so Congress stepped in and declared in the Bankrupt Act and in the amendment to such Act, that in bankruptcy and equity receiverships of railroad corporations, claims for injuries to employees should be paid out of the assets in the hands of the court.

■ In deference to the ruling in the Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, and Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206, so as to make this amendment valid, I construe the word "assets" as referring to the earnings of the railroad in the hands of the Receivers.

█ If the mortgagees have, as held in Fosdick and other cases following it, consented to the use of the earnings of the railroad by the receivers in paying necessary expenses of operations, then as to such payments there could be no want of due process of law, and my problem is limited to whether injury to employees is one of necessary expense. In view of the opinions of those courts holding that it is, supported by the enactment of Congress that it is, I so rule.

Assuming the implied assent of the mortgagee to the payment by the receiver of such expenses of operation as were necessary to keep the railroad operating, leaves the field open to the thought that whatever costs and expenses that would have been paid by the ordinary officers where there was no receiver, might be assumed the mortgagee had assented to, or if the mortgagee should take possession of and operate the road himself, whatever claims he would pay, then his assent would be implied if the receiver should pay them.

█ It is contended that the rights of claimants are fixed as of the date of the order appointing the receiver. United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222; In re K-T Sandwich Shoppe, D.C., 34 F.2d 962; Illinois Cent. R. Co. v. United States Fidelity & Guaranty Co., 5 Cir., 87 F.2d 121.

Accepting this as a proper ruling, then under the six months rule, injuries to employees must have happened within six months prior, or subsequent to, the appointment of the receivers in this case.

█ If the injury happened and the claim was denied by the road and suit was necessary, then the date of the final judgment would fix the beginning of the six months period, the claim accrued then, for otherwise the road could put off the time so as to defeat the claim by merely refusing to pay a just claim.

There is one other question that was not discussed either in the oral argument or in the briefs. The Act says of these claims, they "shall be preferred and paid out of the assets."

To what extent shall such claims be preferred?

That question may come up for decision when the time comes to pass on the priorities and order payment of claims.

█ The United States Fidelity and Guaranty Company having paid the judgments recovered by the employees on affirmance of their judgments, it is subrogated to all their rights.

I am of the opinion that the objections to the claims of Robert R. Pellett, John F. Rogers, Jr., as Administrator, and of the United States Fidelity and Guaranty Company, should be overruled and such claims should be allowed to be paid out of the earnings of the Mobile and Ohio Railroad Company, in the hands of the receivers, together with such claims as may be allowed to participate.