## In re WAXAID CO.
### No. 9693.

District Court, D. Maryland.

Sept. 22, 1943.

Bradley T. J. Mettee, Jr., of Baltimore, Md., and Irving B. Grandberg, of Baltimore, Md., for trustee.

CHESNUT, District Judge.

On January 26, 1942, three creditors of The Waxaid Company filed a petition against that Company for its adjudication as a bankrupt. The petition alleged as an act or acts of bankruptcy the transfer by the bankrupt while insolvent of portions of its property to one or more creditors with intent to prefer them. The answer set forth (1) that the debtor consents to its adjudication as a bankrupt; (2) that it consents to the appointment of a receiver or receivers of its property; (3) that its board of directors has "resolved that the Company file its answer and consent to its adjudication as a bankrupt and to the appointment of a receiver or receivers of its assets, and that the president be authorized to execute and file such answer on behalf of the Company". The order of adjudication was thereupon entered.

Among the claims filed and subsequently duly established, now without further controversy, is that of the United States of America as a creditor in the amount of $10,803.43. The United States claimed priority in payment of this debt before dividends to general creditors under section 64, sub. a(5) of the Bankruptcy Act, as amended by the Chandler Act of 1938, 11 U.S.C.A. § 104, sub. a(5). The subsection reads:

"and (5) debts owing to any person, including the United States, who by the laws of the United States in (is) entitled to priority."

The priority here claimed was that established by 31 U.S.C.A. § 191, which was derived from the Acts of 1797 and 1799. That section as considered in a very recent Supreme Court case, United States v. Emory, 314 U.S. 423, 426, 62 S.Ct. 317, 319, 86 L.Ed. 315, applies to cases " '(1) in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or (2) in which the estate and effects of an absconding, concealed, or absent debtor are attacked by process of law, * * * [or] (3) in which an act of bankruptcy is committed.' "

The gross estate of this bankrupt as the result of liquidation was about $6,000. There are about $16,000 of general creditors. If the claim of the United States in the amount of $10,803.43 arising out of breach of contract by the bankrupt prior to bankruptcy but now liquidated without further controversy, prevails, the general creditors will receive no dividend. The trustee excepted to the grant of priority of the government's claim. The referee heard the evidence of the parties and sustained

the claim. The trustee in bankruptcy then petitioned for a review of the referee's order. Counsel have been heard and after reviewing the papers and the applicable law, I have concluded that the order of the referee must be affirmed.

The referee (the late W. Ainsworth Parker) filed an extended memorandum on April 12, 1943 reviewing the controlling facts, which are really not in dispute, and the applicable law. In view of this full and carefully prepared memorandum it will not be necessary to restate the matter in detail. The referee concluded that the government was entitled to its priority under 31 U.S.C.A. § 191, formerly R.S. § 3466, because it was admitted that the debtor was insolvent and that its answer filed in the bankruptcy proceeding consenting to adjudication and appointment of a receiver, followed by the appointment of the trustee, constituted in substance and effect a voluntary assignment by the debtor. The referee was, however, of the opinion, for the reasons stated in his memorandum, that the procedure did not constitute the commission of an act of bankruptcy by the debtor. But here counsel for the government insist upon both points and particularly on the latter. I agree with the referee that what happened did in substance constitute a making of a voluntary assignment within the meaning of R.S. § 3466; and I also agree with the government's further contention that the procedure was sufficient to show an act of bankruptcy within the meaning of the statute.

It has frequently been held that this priority statute is to be liberally interpreted. United States v. Marxen, 307 U.S. 200, 206, 59 S.Ct. 811, 83 L.Ed. 1222. And it is clear as a general proposition that the statute gives priority to valid claims of the United States under the bankruptcy law as amended in 1926. See United States v. Kaplan, 2 Cir., 74 F.2d 664; Gilbert's Collier on Bankruptcy, 4th Ed., § 1318, p. 1032; 8 C.J.S., Bankruptcy, § 458, p. 1341; Collier on Bankruptcy, 14th Ed., § 64.502.

Prior to the amendment of 1926 it was held by the Supreme Court, affirming the Fourth Circuit (1 F.2d 860), in Davis v. Pringle, 268 U.S. 315, 45 S.Ct. 549, 69 L. Ed. 974, that the Bankruptcy Act as it then stood with regard to priorities in distribution did not give priority to the United States in section 64 as it then read because the United States was not a "person" within the meaning of the statute. But the Act of May 27, 1926, c. 406, § 15, 44 Stat. 666, changed the language by providing "that the term 'person' as used in this section shall include corporations, the United States and the several states and Territories of the United States." The Chandler Act of 1938 merely rephrased the section by the wording giving priority to "debts owing to any person, including the United States, who by the laws of the United States in [is] entitled to priority."

I think it unnecessary to add anything to the reasoning of the referee that the case falls within R.S. § 3466, because it was in effect a voluntary assignment; but I will add a few words with regard to the further view, rejected by the referee, that there was also an act of bankruptcy within the meaning of the statute. The contention of the trustee in bankruptcy here is that the latter condition did not exist because there is no independent affirmative proof that the bankrupt committed an act of bankruptcy prior to the filing of the involuntary petition against it. Here the contention is that the act of bankruptcy referred to in the section (R.S. § 3466, 31 U.S.C.A. § 191) is necessarily limited to the particular acts of bankruptcy defined in the present Bankruptcy Act. I am inclined to think that this limited construction is quite too narrow in view of the history of the legislation. See Bramwell v. United States F. & G. Co., 269 U.S. 483, 46 S.Ct. 176, 177, 70 L.Ed. 368. In that case (not a federal bankruptcy proceeding) Mr. Justice Butler said—

"The specified ways in which insolvency may be manifested include all cases in which an insolvent debtor makes an assignment of his property * * * and they include all cases in which an act of bankruptcy is committed under the laws of a state or the national bankruptcy law. * * * The reference to an act of bankruptcy in section 3466 is general, and it is for the purpose of defining one of the ways in which the debtor's insolvency may be manifested. The priority given does not depend upon any proceeding under the bankruptcy laws of state or nation."

And after referring also in this connection to R.S. § 3466, he continued—

"Taken together these sections mean that a debt due the United States is required first to be satisfied when the possession and control of the estate of the

insolvent is given to another person charged with the duty of applying it to the payment of the debts of the insolvent, as the rights and priorities of creditors may be made to appear." See also Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373, and Collier, 14th Ed. § 64.502.

But apart from this, it seems quite unrealistic to say that there had been no act of bankruptcy, when, as in this case, an involuntary petition in proper form has been filed against a debtor and its answer consents to the adjudication. Here the involuntary petition alleged the existence of an act of bankruptcy committed by the debtor and the answer, not denying it, specifically consents to the adjudication. The proceeding then goes on as an ordinary bankruptcy administration. In these circumstances the debtor will not be permitted to say that he did not commit an act of bankruptcy, but it is suggested in the referee's memorandum that while the matter is res adjudicata as between the petitioning creditors and the bankrupt, it is not binding on the other creditors without affirmative proof, in addition to the effect of the pleadings, that there was in fact an act of bankruptcy committed by the debtor. But the whole basis of the proceeding is to be found in the pleadings which gave jurisdiction to the court and thereby authorized the administration of the estate in bankruptcy. The general creditors who filed their claims in the proceeding came into it and sought the benefit of it as a regular bankruptcy proceeding in which the court had the jurisdiction established by the pleadings. And as against the unsecured creditors I do not think there was any obligation on the part of the United States to submit affirmative evidence of a fact established by the proceedings and constituting the basis for its continuance. We are not here dealing with a situation where an independent plenary suit is brought by the trustee against a person not a party to the bankruptcy case, as in Gratiot County State Bank v. Johnson, 249 U.S. 246, at page 248, 39 S.Ct. 263, 63 L.Ed. 587, where, it is also to be noted, Justice Brandeis said: "The adjudication is, for the purpose of administering the debtor's property, that is, in its legislative effect, conclusive upon all the world."

Attention should also be called to section 3, sub. a(5), of the Bankruptcy Act, as amended by the Chandler Act, 11 U.S. C.A. § 21, sub. a(5), including as an act of bankruptcy "while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property." The answer of the bankrupt in this case falls within this language. It is argued by counsel for the trustee in this case that such an act of bankruptcy must precede the institution of the bankruptcy proceeding to be available as an act warranting adjudication. This is doubtless so for the bankruptcy proceeding of itself, but I incline to the view that this conspicuous and definite act by the debtor is sufficient to constitute an act of bankruptcy within the meaning of R.S. § 3466. See United States v. Emory, 314 U.S. 423, 426, 62 S. Ct. 317, 86 L.Ed. 315.

For these reasons the order of the referee is affirmed.