## Matter of HELLER–SPERRY, Inc., Debtor.

### No. 7178.

United States District Court
D. Rhode Island.

May 10, 1957.

Order Affirmed Nov. 22, 1957.
See 249 F.2d 442.

Alfred B. Stapleton, Trustee, Providence, R. I., for Heller-Sperry, Inc.

Westcote H. Chesebrough, Providence, R. I., for Bankers Trust Co., Rhode Island Hospital Trust Co. and Rockland Atlas National Bank of Boston.

Jacob S. Temkin, Providence, R. I., for Alfred Spear.

DAY, District Judge.

This matter was heard by me on the motion of Bankers Trust Company, Rhode Island Hospital Trust Company and Rockland Atlas National Bank of Boston for summary judgment expunging a proof of claim by Alfred Spear on the following claims against Heller-Sperry, Inc.:

(a) A $100,000 Debenture of Heller-Sperry, Inc., payable to Alfred Spear dated December 31, 1954 and

(b) A $33,333.33 Debenture of Heller-Sperry, Inc., payable to Alfred Spear dated January 1, 1955.

The motion also requested a summary order directing that all dividends to be paid by the Trustee on said debentures be paid to Bankers Trust Company in

accordance with the proof of claim duly filed by said Bankers Trust Company in conjunction with said Rhode Island Hospital Trust Company and said Rockland Atlas National Bank of Boston.

At the outset of the hearing, counsel for Mr. Spear conceded his client had no right to file any proof of claim with respect to the $100,000 debenture. The sole question then before me is—who is entitled to make a proof of claim on said debenture in the amount of $33,333.33 and entitled to receive any dividend payable thereon in these proceedings?

Counsel for Mr. Spear also waived any objections to the propriety of the motion as a means of raising the question to be determined by me.

The motion for summary judgment is supported by an affidavit of a vice-president of the Bankers Trust Company and to this affidavit is attached a copy of the joint subordination agreement between the movants, Heller-Sperry, Inc. and Alfred Spear, Milton J. Heller and Ernest S. Heller. This agreement, dated May 10, 1955, was actually received by the Bankers Trust Company in July, 1955 together with the debentures representing the indebtedness of Heller-Sperry, Inc. to Mr. Spear and Messrs. Heller. No oral testimony was presented at the hearing on the motion.

In the subordination agreement the movants are referred to as "the Banks", the Bankers Trust Company as "Agent", Heller-Sperry, Inc. as "the Borrower", Mr. Spear and the Messrs. Heller as "the Creditors", their claims against Heller-Sperry, Inc., as "Claims" and the indebtedness of Heller-Sperry, Inc., to the Banks as "Liabilities".

The subordination agreement recites in substance that the Borrower is indebted to each of the Creditors in the sum of $133,333.33, that to induce the Banks to make loans to the Borrower the parties to the agreement agree that no payment shall be made on any of said Claims to the Creditors until the Borrower should satisfy all of its Liabilities to the Banks; by its terms the Creditors assigned their Claims to the Agent as collateral security for the ratable benefit and interest of the Banks in accordance with their respective interests in said Liabilities with full right on the part of the Agent in its own name or in the names of the Creditors to collect and enforce said Claims on behalf of the Banks by suit, proof of debt or claim in any proceeding under the Bankruptcy Act or any amendments thereto, or in any dissolution, insolvency, liquidation or other proceeding involving an adjustment of the indebtedness of the Borrower on said Claims or application of any assets of the Borrower to the payment or liquidation thereof or otherwise and agreed that in any proceeding the Agent might accept or reject any plan of reorganization, readjustment or compromise in its discretion.

Provision for the termination of the subordination of the Creditors' Claims is made in paragraph "13" of the agreement, the pertinent provisions of which are as follows:

"13. The subordination hereby effected may be terminated only by written notice actually received from the Creditor(s) by the Banks at their respective offices whereat the Borrower then maintains its bank account, but only as to new Liabilities created after the receipt by the Banks of such notice. In such event (or in the event of termination by operation of law), the Creditor(s) and their respective heirs, legal representatives and assigns shall nevertheless remain bound hereunder with respect to Liabilities created or arising theretofore, and in respect of such Liabilities and any renewals, extensions or other Liabilities arising out of the same, each and every term, covenant, representation and warranty of this agreement shall continue in full force and effect and the Banks and the Agent shall have all the rights accorded hereby as if no such termination had occurred. The Creditor(s) and his/their heirs, executors and personal representatives

hereby do(es) indemnify and hold the Banks harmless from and against any and all loss, claim, costs and damages, howsoever arising, by reason of any action taken or any grant of credit by the Banks in reliance upon this agreement before the Banks shall have received written notice from a responsible source of termination of this agreement by the operation of law. * * *"

The agreement also contains another provision relating to subordination. It is paragraph "15" whose provisions are:

"15. With respect to subordination in the sum of $133,333.33 to be signed by Alfred Spear, this subordination shall be terminated to the extent of $33,333.33 thereof on June 1, 1956 and the borrower is hereby authorized to pay Alfred Spear the said sum of $33,333.33 only on said date."

This provision is in the form of a typed addition to the printed form of agreement and no evidence was submitted to show who prepared it.

The debenture in the sum of $33,333.33, involved herein, was transmitted to the Agent with the executed subordination agreement in July 1955. It bears the following endorsement: "July 15, 1955. Pay to the order of Bankers Trust Company agent pursuant to the provisions of the Joint Subordination Agreement dated May 10, 1955. This debenture to be released and returned June 1, 1956 (S) Alfred Spear."

The closing paragraph of the letter of transmittal is as follows: "The Debenture of Alfred Spear in the amount of $33,333.33 is subordinated pursuant to the Joint Subordination Agreement only until June 1, 1956, at which time said Debenture is to be released and returned to him."

Receipt of this letter was acknowledged by the Agent.

Counsel for Mr. Spear contends that the terms of the endorsement and letter of transmittal and the provisions of paragraph "15" are unequivocal and that the subordination of the debenture in the amount of $33,333.33 ended on June 1, 1956, and that accordingly, he alone has the right to make a proof of claim thereon.

Construing the language of paragraph "15" literally and without regard to the other provisions of the joint subordination agreement, this argument of counsel seems to have merit. But I do not think that in endeavoring to determine the effect and meaning of the language used in paragraph "13" I should consider only its verbiage. Rather I think I should consider it along with the remaining provisions of the subordination agreement to arrive at the intention of the parties and thereby give effect to their understanding.

It must be borne in mind that the joint subordination agreement was executed in order to induce the Banks to lend money to the Borrower and to provide them with collateral security for the payment of the Liabilities of the Borrower representing such loans. It may well be that the parties thereto in May, 1955 were optimistic as to the financial prospects of the Borrower and hoped that its liabilities, if any, on June 1, 1956, would permit of the termination of the subordination of the debenture of $33,333.33 and still leave adequate collateral security for the payment of such Liabilities. But despite this possible optimism, it is clear that the parties intended that the Banks would be protected to the extent of its value by the assignment thereof in the event the Borrower became insolvent or bankrupt prior to that date. This is manifest from the provisions of the assignment whereby the Agent was empowered to make proof of debt or claim on the collateral security in any proceeding under the Bankruptcy Act involving an adjustment of the indebtedness of the Borrower. Had the debenture been sold by the Agent and the proceeds of the debenture applied toward the payment of the Liabilities of the Borrower prior to June 1, 1956, I doubt that

Mr. Spear would contend that he was entitled to its release and return. Here a contingency contemplated by the parties occurred—the institution of proceedings for reorganization of the Borrower under the Bankruptcy Act on January 7, 1956. Considering all of the provisions of the joint subordination agreement, I am satisfied that it was the intention of the parties to that agreement that the subordination of the debenture in the amount of $33,333.33 was to be terminated on June 1, 1956 if and only if insolvency or bankruptcy proceedings involving an adjustment of the indebtedness of the Borrower had not been instituted prior to that date or if said debenture had not then been disposed of by the Agent pursuant to the assignment for the ratable benefit of the Banks. To adopt the construction of paragraph "15" urged by Mr. Spear would be to conclude that in executing the assignment of said debenture he was doing an utterly purposeless act and that his action was so regarded by the Banks. This I am not willing to do.

The provability of a claim in Bankruptcy is determined as of the date of the filing of the petition. United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222; 3 Collier on Bankruptcy (14th Ed.) page 1769. This is likewise the rule in proceedings under Chapter X of the Bankruptcy Act. 6 Collier on Bankruptcy (14th Ed.) page 2834. At the date of the filing of the petition in the proceedings for the reorganization of the Borrower the Agent was the owner of and in possession of said debenture. It was the only person entitled to file a proof of claim thereon. It has done so. The fact that the reorganization proceedings were not completed before June 1, 1956 cannot deprive the Banks of their rights under the assignment. In my opinion Alfred Spear did not have any standing to file a proof of claim on said $33,333.33 debenture.

The motion to expunge his proof of claim in its entirety is granted and the Trustee is authorized and directed to pay the dividend on both of said debentures, to the Bankers Trust Company in accordance with the proof of claim duly filed by it in conjunction with said Rhode Island Hospital Trust Company and said Rockland Atlas National Bank of Boston.