**SMALL BUSINESS ADMINISTRATION,**
Appellant,

v.

**G. M. McCLELLAN, Trustee, Appellee.**

**Matter of S. H. BYQUIST, an individual, doing business as Western Distributors, Bankrupt.**

**No. 6117.**

United States Court of Appeals
Tenth Circuit.

Nov. 6, 1959.

Morton Hollander, Attorney, Department of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Wilbur G. Leonard, U. S. Atty., Topeka, Kan., and Samuel D. Slade and Peter H. Schiff, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellant.

John Q. Royce, Salina, Kan., for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this bankruptcy proceeding the court below affirmed a referee's order allowing a claim of Small Business Administration as an unsecured claim and denying it any priority. The only question on appeal is the right to priority over other unsecured creditors.

The facts are not in dispute. Byquist, the bankrupt, applied on a Small Business Administration[1] form, entitled "Limited Loan Participation Application for Loan," to the Brookville State Bank of Brookville, Kansas, for a $20,000 loan. On October 30, 1956, the Bank endorsed the application to show that it was willing to make the loan upon the participation of SBA therein to the extent of 75%. SBA agreed and on November 19, 1956, entered into a "Participation Agreement" with the Bank. Therein it was provided that upon written demand by the Bank SBA would purchase a 75% interest; that the Bank would hold the note and on five days written demand would transfer it to SBA; that the holder of the note would service it and remit promptly to the other party its pro rata share; and that SBA and the Bank were to bear any loss incurred ratably according to their respective interests in the loan.

On November 21, 1956, SBA sent the Bank its check in the amount of $15,-000 for the sole purpose of purchasing a 75% interest in the loan. The Bank then loaned $20,000 to Byquist who executed and delivered a note payable to the Bank and made out on an SBA form in which he agreed to use the loan proceeds solely for the purposes set out in the SBA loan authorization and to reimburse the "Holder" and SBA for expenses incurred by them in connection with the loan.

After the filing of an involuntary petition in bankruptcy, Byquist was adjudicated a bankrupt on September 5, 1957, and a trustee was duly appointed. The estate is valued at approximately $19,-000 and the claims filed exceed $43,000.

Subsequent to the date of bankruptcy, the Bank assigned the note to SBA which on October 15, 1957, filed a claim for the unpaid balance amounting to $16,788.42 and claimed priority therefor.

At the outset we have the contention of the trustee that SBA is not an agency of the United States and hence is not entitled to any priority given the United States. In view of the disposition which we make of this case it is not necessary to consider that point. For the purposes hereof we assume that the claim belongs to and is made by the United States subject only to its agreement to share the loan proceeds and losses ratably with the Bank.

The issue is whether, at the date of bankruptcy, there was a debt which was due the United States within the meaning of R.S. § 3466[2] and which was for that reason entitled to a priority under § 64, sub. a(5) of the Bankruptcy Act.[3]

The note was made payable to the Bank and was held by the Bank on the date of bankruptcy. In United States v. Marxen, 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222, it was determined that the United States was not entitled to priority on a claim based on a note which had been assigned after bankruptcy upon the payment by the Federal Housing Administrator of a loss under an insurance policy issued pursuant to the National Housing Act, 12 U.S.C.A. § 1703. This decision was followed in In re Miller, 2 Cir., 105 F.2d 926–928, wherein it appeared that the bankrupt obligor had agreed to indemnify the United States for any loss it might sustain by reason of its insurance of the credit. Basically, the rights of the United States in each case were those of a subrogee whereas here the United States participated in the loan. Such participation is said to result in beneficial ownership of a part of the debt on the date of bankruptcy and, hence, to render unimportant the fact of post-bankruptcy assignment.

■ On the facts of the case at bar we deem it unnecessary to decide whether the United States has any greater

1. Hereinafter referred to as SBA.

2. 31 U.S.C.A. § 191, which provides in part that "debts due to the United States shall be first satisfied" out of the estate of an insolvent debtor.

3. 11 U.S.C.A. § 104, sub. a(5), which allows a fifth priority to "debts owing to any person, including the United States, who by the laws of the United States i[s] entitled to priority."

rights as a participant in a loan pursuant to the Small Business Act of 1953[4] than it had as a subrogee under an insurance policy issued by it under the National Housing Act. The claim of the United States rests on the premise that it is asserting a debt covered by § 3466 and recognized by § 64, sub. a(5) of the Bankruptcy Act. While § 3466 must be construed liberally to effectuate its purpose to protect the public finances,[5] the Court said in Marxen that:[6]

> " * * * this principle of construction is subject to the limitation that the generality of the language of the section is restricted by the purpose to grant priority to the United States, only, and by legislative intention, as shown by other statutes."

In the Small Business Act of 1953, Congress declared the policy that the government should aid the interests of small business concerns "to preserve free competitive enterprise."[7] To attain that end the administrator of the act is empowered, among other things, to make loans to small business concerns either directly or "in cooperation with banks * * * through agreements to participate * * *."[8] Thus, the United States went to the financial aid of small business by the general extension of credit which otherwise would have been available only from private lending institutions. The United States entered upon a commercial venture which supplemented the activities of private business.

The argument is advanced that by so doing, the United States intended to forego the applicability of § 3466 because the assertion of the priority provided thereby would not benefit small business but would handicap it in its efforts to operate with private financing. The situation is said to be analogous to that considered in United States v. Guaranty Trust Company of New York, 280 U.S. 478, 50 S.Ct. 212, 74 L.Ed. 556, where debts incurred under the Transportation Act of 1920, 49 U.S.C.A. § 1 et seq., were held to have no priority under § 3466, and distinguishable from United States v. Emory, 314 U.S. 423, 62 S.Ct. 317, where § 3466 was applied to certain transactions under the National Housing Act, the purpose of which was held to be not the strengthening of the general credit of property owners but the stimulation of the business trades. Here again the intriguing arguments presented need not be resolved.

The determining fact is that SBA has by written contract with the Bank agreed to share ratably the proceeds and losses resulting from the transaction with Byquist.

■ Marxen holds that absent controlling legislation, which is not present here, § 3466 grants priority only to the United States. In Nathanson v. National Labor Relations Board, 344 U.S. 25, 28, 73 S.Ct. 80, 97 L.Ed. 23, it was said that § 3466 may not be extended to create a priority for a claim which the United States is collecting for a private party. This principle would be violated if the claim of the United States were here given priority.

The United States is bound by its written contract to account to the Bank for the Bank's 25% share of any collection made under the note. Hence, the Bank would share to that extent in any proceeds resulting from the award of a priority to the United States. No such priority in a private creditor is provided by § 3466.

■■ The Bankruptcy Act is intended to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands.[9] The use

---

4. 15 U.S.C.A. §§ 631–647.

5. United States v. Emory, 314 U.S. 423, 426, 62 S.Ct. 317, 86 L.Ed. 315. Cf. United States v. Johnson, 10 Cir., 87 F.2d 155, 161.

6. 307 U.S. 206, 59 S.Ct. 814.

7. 15 U.S.C.A. § 631(a).

8. 15 U.S.C.A. § 636(a).

9. Kothe v. R. C. Taylor Trust, 280 U.S. 224, 227, 50 S.Ct. 142, 74 L.Ed. 382.

of § 3466 to prefer the Bank over the other private creditors would defeat that intent.

The United States has engaged in a commercial enterprise and made no effort to safeguard its rights under § 3466. In a contract made on its own forms it has agreed to share ratably proceeds and losses. It may not assert a priority which will produce a recovery that by contract must be divided with a private entity.

Affirmed.