**In the Matters of AIRLINES TRANS-PORT CARRIERS, Inc., a California corporation, and California Central Airlines, Incorporated, a Nevada corporation, Bankrupts.**

**Nos. 59560, 59561.**

United States District Court,
S. D. California, Central Division.

Feb. 28, 1955.

Guthrie, Darling & Shattuck, Los Angeles, Cal., Hale, Stimson, Russell & Nickerson, New York City, for Southwest Airways and Allegheny Airlines, Inc.

Quittner & Stutman, Los Angeles, Cal., for Airline Transport and California Airlines.

Robert Winkler, Los Angeles, Cal., for Harry Conover.

Hubert F. Laugharn, Los Angeles, Cal., for Wm. A. Wylie, Trustee.

Schwartz & Alschuler, Beverly Hills, Cal., for Ultramar International.

Laughlin E. Waters, U. S. Atty., Los Angeles, Cal., for United States.

Edward C. Freutel, Jr., Los Angeles, Cal., for Amsterdam Overseas Corp.

Benno M. Brink, Los Angeles, Cal., Referee in Bankruptcy.

HALL, District Judge.

The two within proceedings started simultaneously on January 27, 1954, as reorganizations under the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 722. The debtors were continued in possession of, and operated, the properties until January 25, 1955, at which time both debtors were adjudicated as bankrupts, and William A. Wylie was appointed as trustee for both bankrupts. The trustee was authorized to conduct the business of the bankrupts.

On February 14, 1955, after notice, a sale of all the assets of both bankrupts was had, at which time the Southwest Airways and the Allegheny Airlines, Inc. bid the sum of $800,000, and on that date the sale was confirmed to them by the order of the Referee. The order confirming sale also provided that "The trustee is likewise directed to terminate his operations of said businesses as of this date." Terms of the sale provided for the payment of $250,000 forthwith, and the balance of $550,000 in cash within 14 days thereof, or on February 28, 1955. By the order confirming sale, the title was retained in the trustee until the full consideration was paid.

It appears from the schedules that ownership of most of the physical properties, i. e., planes, parts, etc., was claimed to be in Airline Transport Carriers. The appraisal made and filed on February 14, 1955, however, appraised the properties of both bankrupts as a unit, without segregation as to ownership. No order of the Referee has been made determining which bankrupt owned what property. And the properties were sold as a unit. The bid accepted was the highest bid. In addition to the physical properties sold, there was also sold "All licenses, permits, applications therefor,

qualifications and privileges in connection with the present operations of the business of the respective bankrupts."

California Central owned Intra-State Certificate No. 6–4(c), issued by the State of California under California State Law. It operated entirely within the State of California, and did not carry mail. It had no operating certificate, or letter of registration, or exemption issued by the Federal government under the Civil Aeronautics Act, 49 U.S.C.A. § 401 et seq.

Airline Transport Carriers had "Letter of Registration No. 704 non-certificated irregular Air Carrier" issued by the Federal Civil Aeronautics Board under date of August 5, 1947; and, "A Carrier Operating Certificate" No. 6–173, issued by that Board effective September 12, 1947; and an Order No. E–5487 by that Board dated July 3, 1951, granting exemption from certain provisions of the Civil Aeronautics Act.

A Petition for the review of the order of the Referee confirming the sale was timely filed on February 16, 1955, by one Harry Conover. On February 18, 1955, upon the petition of Conover, this Court issued an Order to Show Cause to the trustee and the purchasers of the assets why an order should not be made herein staying and suspending the execution and enforcement of said Order Confirming Sale until hearing and final decision on the Petition for Review under 11 U.S. C.A. § 67, sub. c. The Order to Show Cause was made returnable on February 28, 1955, at 10:00 a. m., and further execution of the Order Confirming Sale was stayed until then.

Thereafter, and on February 23, 1955, the Referee filed his certificate on Conover's Petition for Review, and the trustee noticed it for hearing on February 28, 1955, at the hour of 10:00 o'clock a. m., the same date and hour set for hearing the Order to Show Cause. At the time of calling the matter, the Court ordered and directed that the hearing proceed on the merits of the Petition for Review.

The sole ground for objection to the confirmation of sale is that the sale by the trustee, as confirmed by the Referee, was in violation of 49 U.S.C.A. § 488, Section 408 of the Civil Aeronautics Act.

Subsection (a) [1] of Section 488 generally makes unlawful, unless approved by order of the Board as provided in that section, the acquisition of the properties of one air carrier by another air carrier.

Subsection (b) [2] of Section 488 provides the procedure to be followed by a

1. 49 U.S.C.A. § 488—
"(a) It shall be unlawful, unless approved by order of the Board as provided in this section—
"(1) For two or more air carriers, or for any air carrier and any other common carrier or any person engaged in any other phase of aeronautics, to consolidate or merge their properties, or any part thereof, into one person for the ownership, management, or operation of the properties theretofore in separate ownerships;
"(2) For any air carrier, any person controlling an air carrier, any other common carrier, or any person engaged in any other phase of aeronautics, to purchase, lease, or contract to operate the properties, or any substantial part thereof, of any air carrier;
"(3) For any air carrier or person controlling an air carrier to purchase, lease, or contract to operate the properties, or any substantial part thereof, of any per-

son engaged in any phase of aeronautics otherwise than as an air carrier;
"(4) For any foreign air carrier or person controlling a foreign air carrier to acquire control, in any manner whatsoever, of any citizen of the United States engaged in any phase of aeronautics;
"(5) For any air carrier or person controlling an air carrier, any other common carrier, or any person engaged in any other phase of aeronautics, to acquire control of any air carrier in any manner whatsoever;
"(6) For any air carrier or person controlling an air carrier to acquire control, in any manner whatsoever, of any person engaged in any phase of aeronautics otherwise than as an air carrier; * *."

2. 49 U.S.C.A. § 488—
"(b) Any person seeking approval of a consolidation, merger, purchase, lease, operating contract, or acquisition of control, specified in subsection (a) of this section, shall present an application to the

person seeking approval of the things specified as unlawful in subsection (a).

Section 1(2) of the Civil Aeronautics Act, 49 U.S.C.A. § 401(2), defines "air carrier." It provides, " 'Air carrier' means any citizen of the United States who undertakes, whether directly or indirectly or by a lease or any other arrangement, to engage in air transportation." Section 1(10) of the Civil Aeronautics Act, 49 U.S.C.A. § 401(10), defines "air transportation"—" 'Air transportation' means interstate, overseas, or foreign air transportation or the transportation of mail by aircraft."

It is conceded by all parties that the Southwest Airways and the Allegheny Airlines, Inc. are, and at all times herein involved, were, each an "air carrier" within the terms and provisions of the Civil Aeronautics Act.

■ Clearly, California Central Airlines was not an "air carrier" as defined by Section 401 of Title 49, since it was not engaged in "air transportation" involving "interstate, overseas, or foreign air commerce or the transportation of mail by aircraft". It did none of those things, and the terms of the Civil Aeronautics Act do not apply to it, and hence, not to the sale of its assets by the trustee.

The Airlines Transport Carriers, Inc., however, had a Letter of Registration, No. 704, issued by the Civil Aeronautics Board on August 5, 1947, an Air Carrier Operator's Certificate No. 6–173, effective September 12, 1947, and an Order granting exemption, Serial No. E–5487, dated July 2, 1951.

■ It was stipulated that it carried passengers in interstate commerce prior to the time of the filing of the within proceedings. It was, therefore, an "air carrier" within the terms of the Civil Aeronautics Act.

A letter from the Civil Aeronautics Board was received and filed at the hearing on February 28, 1955, wherein the Board took the position that the trustee in bankruptcy was an "air carrier" within the terms of the Act, and that any sale was subject to the provisions of Section 408(a) (3) of the Act, 49 U.S.C.A. § 488. Reviewing petitioner contends that subdivision (a)(1), (2), (3), (5) and (6) of Section 408 are applicable.

The trustee and the purchasers at the trustee's sale strenuously contend that no prior approval of the sale in bankruptcy is required to be had under the terms of the Civil Aeronautics Act in that the trustee was not an "air carrier."

The Order of Sale confirmed the sale of all of the property, the title to which passed to the trustee under the terms of the Bankruptcy Act.

Board, and thereupon the Board shall notify the persons involved in the consolidation, merger, purchase, lease, operating contract, or acquisition of control, and other persons known to have a substantial interest in the proceeding, of the time and place of a public hearing. Unless, after such hearing, the Board finds that the consolidation, merger, purchase, lease, operating contract, or acquisition of control will not be consistent with the public interest or that the conditions of this section will not be fulfilled, it shall by order, approve such consolidation, merger, purchase, lease, operating contract, or acquisition of control, upon such terms and conditions as it shall find to be just and reasonable and with such modifications as it may prescribe: Provided, That the Board shall not approve any consolidation, merger, purchase, lease, operating contract, or acquisition of control which would result in creating a monopoly or monopolies and thereby restrain competition or jeopardize another air carrier not a party to the consolidation, merger, purchase, lease, operating contract, or acquisition of control: Provided further, That if the applicant is a carrier other than an air carrier, or a person controlled by a carrier other than an air carrier or affiliated therewith within the meaning of section 5(8) of this title, such applicant shall for the purposes of this section be considered an air carrier and the Board shall not enter such an order of approval unless it finds that the transaction proposed will promote the public interest by enabling such carrier other than an air carrier to use aircraft to public advantage in its operation and will not restrain competition."

Evidence introduced at the time of the hearing showed that on February 9, 1955, after the adjudication in bankruptcy, the trustee engaged in interstate flights from San Francisco, California, to Reno, Nevada, as trustee for the Airlines Transport Carriers, Inc.

It was urged that the Letter of Registration, No. 704, and its supporting orders and documents passed no right or title to the trustee to operate the airline, and that the trustee could not do so without the prior approval of the Civil Aeronautics Board, either upon certification proceedings or by Letter of Exemption. If this is so, then obviously, the *trustee* would not be an "air carrier" under the terms of the Civil Aeronautics Act. But even if the title to such certificates did pass to the trustee, it does not necessarily mean that the sale was void, as will be hereafter seen.

Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110, provides, in subsection a that the "trustee * * * shall * * * be vested by operation of law with the title of the bankrupt * * *," to property including, subsection a (3), "powers which he [the bankrupt] might have exercised for his own benefit, but not those which he might have exercised solely for some other person".

■ It is my conclusion that whatever rights the airlines Transport Carriers had under Letter of Registration No. 704 and its supporting documents passed to the trustee in bankruptcy by operation of law upon the adjudication in bankruptcy without the prior approval of the Civil Aeronautics Board. Not only is this so by reason of the provisions of Section 70 of the Bankruptcy Act above referred to, but also by reason of the provisions of Section 11 of Title 11, U.S.C.A., defining the jurisdiction of the courts in bankruptcy. Subdivision (5) thereof provides that such courts may, "Authorize the business of bankrupts to be conducted for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates

* * *;" and subdivision (15) provides that such courts may "make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title".

The record shows that the Referee authorized the trustee to conduct the business of the bankrupt for the limited period from the date of adjudication, January 25, 1955, until the close of business on February 14, 1955.

■ This was such a "limited period" as to be within the power of the bankruptcy court, without the trustee becoming an "air carrier" under the terms of the Civil Aeronautics Act. Whether an order for the conduct of the business for a more extended period, or for an indefinite period, would make the trustee an "air carrier" is not before the court, and is not decided.

The Letter of Registration No. 704 provides: "This Letter of Registration is not transferrable."

The trustee sold all of the right, title and interest of the bankrupts, but by the terms of the Letter of Registration, the trustee, while he could operate under it, could not sell it, and of necessity did not sell and transfer it to the purchasers by the sale on February 14, 1955. Any attempted transfer of any right, title or interest under that Letter of Registration under the terms of the Civil Aeronautics Act would require approval or exemption thereof by the Civil Aeronautics Board.

■ The salutary purpose of the Bankruptcy Act is to preserve the assets of the bankrupt for the benefit of the creditors. An order authorizing the sale of the assets of the bankrupt is intended to effectuate this purpose. The Civil Aeronautics Act was not intended to thwart this purpose by preventing a sale which would best achieve a preservation of those assets. The purpose of the Civil Aeronautics Act is to foster air transportation, and in furtherance of this

purpose, to preserve competition between air carriers when the public interest is thereby served. Its sphere of operation is entirely removed from that of the Bankruptcy Act, and neither Act of Congress invades or prevents the fulfillment of the purpose of the other.

It is to be noted that Section 408 of the Civil Aeronautics Act, relied on by the petitioning creditor as rendering unlawful this sale in bankruptcy, is, by its terminology, directed at purchases, consolidations, etc., which may be generally described as "acquisitions" of property by an air carrier, and makes unlawful certain such *acquisitions* unless approval of the Civil Aeronautics Board is obtained.

While such *acquisitions* in violation of Section 408 are made "unlawful," a sale in bankruptcy is not made void, because subsection (b) of the Act gives power to the Board to approve acquisitions, and Section 416 of the Act, 49 U.S. C.A. § 496, gives the Board power to exempt such transactions.

It is for the Civil Aeronautics Board, and not the Courts, to say whether a particular acquisition offends, and if so, to apply against the purchaser the sanctions permitted by Congress in the Civil Aeronautics Act. The Courts will not invade the jurisdiction of the Board to unnecessarily decide that question of which Congress has made the Board the arbiter. It is not necessary for the Court to reach that question. So far as the sale in bankruptcy is concerned, whatever perils, if any exist under the Civil Aeronautics Act, attach to the purchaser, and cannot invalidate the sale in bankruptcy.

The sale comports in all respects with the Bankruptcy Act, and is valid.

A point was made that Conover was not a "person aggrieved" by the order confirming sale, and was not a "party in interest" as those terms are used in subdivision c of 11 U.S.C.A. § 67. I have proceeded to a decision on the merits without consideration of that contention, as the interests of the bankrupt estate and of all parties require that the validity

of the sale be set at rest as promptly as possible.

The Clerk is ordered to file the within Memorandum nunc pro tunc as of that date.